IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

BRANCH BANKING AND TRUST COMPANY,

Plaintiff,

v.                                                         CIVIL ACTION NO.   2:14-cv-19880

SAYER BROTHERS, INC., et al.,

Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Motion for Summary Judgment Against Defendants ("Plaintiff's Motion"), (ECF No. 43), and Defendants' Motion for Summary Judgment Dismissing Plaintiff's Complaint Filed Herein ("Defendants' Motion"), (ECF No. 49). For the reasons provided herein, the Court **DENIES** both motions.

### *I.  Background*

This is a breach-of-contract action in which Plaintiff seeks to recover from Defendants the outstanding balances of unpaid debts (the "Debts"). The Debts originated from two promissory notes Defendants executed with Plaintiff.

### A.      The Loan Agreements

Defendants—either as individuals or through the business entity Defendant Sayer Brothers, Inc. ("Sayer Brothers")—executed three promissory notes with Plaintiff, each of which were secured by real property. These three notes include the following: (1) a promissory note dated

1

December 11, 2008 with an original principal amount of $220,000 ("Note 3"), (ECF No. 43, Ex. A); (2) a promissory note dated April 15, 2009 with an original principal amount of $200,000 ("Note 12"), (*id.*, Ex. D); and (3) a promissory note dated December 22, 2009 with an original principal amount of $830,000 ("Note 14"), (*id.*, Ex. F). Note 3 and Note 14 are the subject of the instant litigation. (*See* ECF No. 42.) However, Note 12 is also relevant in the instant matter, as whether Defendants breached that agreement has bearing on Defendants' purported breach of Note 14.

      1.    <u>Note 3</u>

In an agreement dated December 11, 2008, Defendants Farris Sayer and David Sayer executed Note 3, which provides for an original principal amount of $220,000. (*Id.*, Ex. A.) Note 3 states that, as the "borrower[s]," Defendants Farris Sayer and David Sayer agreed to pay "consecutive [m]onthly installments . . . in 59 equal payments of $1,690.26" commencing on January 11, 2009 and payable to Plaintiff. (*Id.* at 1.) These Defendants also agreed to make "one final payment of all remaining principal and accrued interest due on" December 11, 2013. (*Id.*) Note 3 provides the following, in pertinent part, regarding events of default and Plaintiff's remedies for such:

> The failure to pay any part of the principal or interest when due on [Note 3] or to fully perform any covenant, obligation or warranty on this or on any other liability to [Plaintiff] by any one or more of [Defendants Farris Sayer and David Sayer], by any affiliate of [Defendants Farris Sayer and David Sayer] . . . , or by any guarantor or surety of [Note 3] . . . or in the event of a default pursuant to [the deed of trust corresponding to Note 3] or any other obligation of any of [Defendants Farris Sayer and David Sayer] or any [o]bligor in favor of [Plaintiff] . . . shall be a material default hereunder and [Note 3] and other debts due [Plaintiff] by any one or more of [Defendants Farris Sayer and David Sayer] shall immediately become due and payable without notice, at the option of [Plaintiff].

(*Id.* at 2.)

In a Note Modification Agreement dated February 25, 2010, Plaintiff and Defendants Farris Sayer and David Sayer agreed to modify the interest rate for Note 3, as well as to change the "consecutive [m]onthly installments" to "44 equal payments of $1,613.00" commencing on April 11, 2010. (*Id.* at 5.) This modification agreement did not, however, adjust the date when "all remaining principal and accrued interest" was due—December 11, 2013. (*Id.*) The Note 3 modification agreement also provides "that except for the modification(s) contained herein [Note 3], and any other [l]oan [d]ocuments or [a]greements evidencing, securing or relating to [Note 3] and all singular terms and conditions thereof, shall be and remain in full force and effect." (*Id.* at 6.)

In connection with Note 3, Defendants Farris Sayer and David Sayer, individually and as "[s]urviving [t]rustees . . . of David F. & Alex F. Sayer," executed "A Credit Line Deed of Trust and Security Agreement" dated December 11, 2008 (the "Note 3 Deed of Trust"). (ECF No. 43, Ex. B.) The Note 3 Deed of Trust lists "Farris David Sayer and David F[.] Sayer, II Surviving Trustees Under Last Will & Test. of David F. & Alex F. Sayer, Deceased" as the grantors, BB&T Collateral Service Corporation as the trustee, and Plaintiff as the beneficiary. (*Id.* at 1.) The Note 3 Deed of Trust conveys a security interest to the trustee in real property "situate[d] in The City of Charleston, Kanawha County, West Virginia, and being all of Lot[] Nos. One . . . Two . . . and Three . . . of Block Four . . . , of Hogue's 20 Acre Forest Hill Addition" (the "Note 3 Property"). (*Id.* at 2; *see also id.* (providing a description of the Note 3 Property).) The Note 3 Property is presently occupied by a Family Dollar store. (ECF No. 50 at 1.)

Pursuant to the Note 3 Deed of Trust, Defendants Farris Sayer and David Sayer agreed to "make timely payment of all ad valorem taxes, assessments or other charges or encumbrances

which may constitute a lien upon the [Note 3 Property]." (ECF No. 43, Ex. B at 3.) The Note 3

Deed of Trust includes the following relevant provisions regarding events of default:

> EVENTS OF DEFAULT. Grantor shall be in default under this [Note 3] Deed of
> Trust upon the occurrence of any of the following:
>
> (a)     Default in the payment or performance of any of the [d]ebt [pursuant to
> Note 3], or of any covenant or warranty, in this [Note 3] Deed of Trust, in [Note 3]
> or other [d]ocuments, or in any other note of [Defendants Farris Sayer and David
> Sayer] to [Plaintiff] or any contract between [Defendants Farris Sayer and David
> Sayer] and [Plaintiff]; or in any other contract between [Defendants Farris Sayer
> and David Sayer] and [Plaintiff] made for the benefit of [Defendants Farris Sayer
> and David Sayer]; or
>
> . . .
>
> (g)     The sale . . . , transfer or encumbrance of all or any part of the [Note 3
> Property] or any interest therein, or any change in the ownership or control of
> [Defendants Farris Sayer and David Sayer] [sic], without [Plaintiff's] prior written
> consent . . . .

(*Id.* at 4.) The Note 3 Deed of Trust also includes the following pertinent remedy for Plaintiff upon

Defendants' default: "Upon the occurrence of any event of default, and after having given any

required notice, [Plaintiff] may, at its option, without further notice to [Defendants Farris Sayer

and David Sayer], . . . declare the [debt pursuant to Note 3] to be immediately due and payable in

full . . . ." (*Id.*)

    2.    Note 12

In an agreement dated April 15, 2009, Defendant Sayer Brothers—through its president,

Defendant Farris Sayer—executed Note 12, which provides for an original principal amount of

$200,000. (ECF No. 43, Ex. D.) Note 12 states that, as the "borrower," Defendant Sayer Brothers

agreed to pay "consecutive [m]onthly installments . . . in 11 equal payments of $1,511.05"

commencing on May 16, 2009 and payable to Plaintiff. (*Id.* at 1.) Defendant Sayer Brothers also

4

agreed to make "one final payment of all remaining principal and accrued interest due on" April 16, 2010. (*Id.*) Note 12 provides the following pertinent language—which is identical to the corresponding language in Note 3—regarding events of default and Plaintiff's remedies for such:

> The failure to pay any part of the principal or interest when due on [Note 12] or to fully perform any covenant, obligation or warranty on this or on any other liability to [Plaintiff] by . . . [Defendant Sayer Brothers], by any affiliate of [Defendant Sayer Brothers] . . . , or by any guarantor or surety of [Note 12] . . . or in the event of a default pursuant to [the deed of trust corresponding to Note 12] or any other obligation of . . . [Defendant Sayer Brothers] or any [o]bligor in favor of [Plaintiff] . . . shall be a material default hereunder and [Note 12] and other debts due [Plaintiff] by . . . [Defendant Sayer Brothers] shall immediately become due and payable without notice, at the option of [Plaintiff].

(*Id.* at 2.)

Plaintiff and Defendant Sayer Brothers modified some terms of Note 12 by Note Modification Agreements dated May 24, 2010, June 24, 2011, December 16, 2011, and July 3, 2012. (*Id.* at 5–20.) In pertinent part, these modifications ultimately adjusted the "consecutive [m]onthly installments" to "11 equal payments of $1622.33" and changed the date when "all remaining principal and accrued interest" was due from April 16, 2010 to July 3, 2013. (*See id.* at 17.) As with the modifications of Note 3, the Note 12 modification agreements provides "that except for the modification(s) contained herein [Note 12], and any other [l]oan [d]ocuments or [a]greements evidencing, securing or relating to [Note 12] and all singular terms and conditions thereof, shall be and remain in full force and effect." (*Id.* at 6, 10, 14, 18.)

In connection with Note 12, Defendants "David F. Sayer, Jr. and Farris David Sayer, Trustees" executed a Credit Line Deed of Trust and Security Agreement (the "Note 12 Deed of Trust"). (*See id.* at 1.) The Note 12 Deed of Trust conveyed a security interest for the benefit of

Plaintiff in "real property and the rents therefrom" (the "Note 12 Property"). (ECF No. 50 at 1–2.) This property is occupied by a Long John Silver restaurant. (*Id.*)

3.     Note 14

In an agreement dated December 22, 2009, Defendant Sayer Brothers—through both its president, Defendant Farris Sayer, and vice president, Defendant David Sayer—executed Note 14, which provides for an original principal amount of $830,000.00. (ECF No. 43, Ex. F.) Note 14 states that, as the "[b]orrower," Defendant Sayer Brothers agreed to pay "consecutive [m]onthly installments . . . in 59 equal payments of $6,235.19" commencing on May 2, 2010 and payable to Plaintiff. (*Id.* at 1.) Defendant Sayer Brothers also agreed to make "one final payment of all remaining principal and accrued interest due on" April 2, 2015. (*Id.*) Note 14 provides the following relevant language—which is identical to the corresponding language in Note 3 and Note 12—regarding events of default and Plaintiff's remedies for such:

> The failure to pay any part of the principal or interest when due on [Note 14] or to fully perform any covenant, obligation or warranty on this or on any other liability to [Plaintiff] by . . . [Defendant Sayer Brothers], by any affiliate of [Defendant Sayer Brothers] . . . , or by any guarantor or surety of [Note 14] . . . or in the event of a default pursuant to [the deeds of trust corresponding to Note 14] or any other obligation of . . . [Defendant Sayer Brothers] or any [o]bligor in favor of [Plaintiff] . . . shall be a material default hereunder and [Note 14] and other debts due [Plaintiff] by . . . [Defendant Sayer Brothers] shall immediately become due and payable without notice, at the option of [Plaintiff].

(*Id.* at 2.)

In a Note Modification Agreement dated May 24, 2010, Plaintiff and Defendant Sayer Brothers agreed to modify the "consecutive [m]onthly installments" under Note 14 to "59 equal payments of $6,028.08" commencing on August 2, 2010. (*Id.* at 5.) This modification agreement also changed the date when "all remaining principal and accrued interest" is due from April 2,

6

2015 to July 2, 2015. (*Id.*) The Note 14 modification agreement further provides "that except for the modification(s) contained herein [Note 14], and any other [l]oan [d]ocuments or [a]greements evidencing, securing or relating to [Note 14] and all singular terms and conditions thereof, shall be and remain in full force and effect." (*Id.* at 6.)

In connection with Note 14, Defendants executed three "Credit Line Deed[s] of Trust and Security Agreement[s]," each dated December 22, 2009 (the "Note 14 Deeds of Trust"). (ECF No. 43, Exs. G–I.) The first deed of trust (the "First Note 14 Deed of Trust") lists David Sayer as the grantor, BB&T Collateral Service Corporation as the trustee, and Plaintiff as the beneficiary. (*Id.*, Ex. G at 1.) The First Note 14 Deed of Trust conveys a security interest to the trustee in residential real property owned by Defendant David Sayer. (*Id.* at 7; *see also id.* (providing a description of this property).)

The second deed of trust associated with Note 14 (the "Second Note 14 Deed of Trust") lists "Farris D[.] Sayer and David F[.] Sayer, Jr. as trustees of the Alex F[.] Sayer and David F[.] Sayer Testamentary Trust" as the grantors, BB&T Collateral Service Corporation as the trustee, and Plaintiff as the beneficiary. (ECF No. 43, Ex. H at 1.) The Second Note 14 Deed of Trust conveys a security interest to the trustee in residential real property owned by Defendants Farris Sayer and David Sayer, as trustees of the Alex F. Sayer and David F. Sayer Testamentary Trusts. (*Id.* at 7; *see also id.* (providing a description of this residential property).)

The third deed of trust associated with Note 14 (the "Third Note 14 Deed of Trust") lists Defendant Farris Sayer as the grantor, BB&T Collateral Service Corporation as the trustee, and Plaintiff as the beneficiary. (ECF No. 43, Ex. I at 1.) The Third Note 14 Deed of Trust conveys a security interest to the trustee in residential real property owned by Defendant Farris Sayer

(together with the properties associated with the First Note 14 Deed of Trust and the Second Note 14 Deed of Trust, the "Note 14 Properties"). (*Id.* at 7; *see also id.* (providing a description of this property).)

Each of the Note 14 Deeds of Trust provide that the grantor agreed to "make timely payment of all ad valorem taxes, assessments or other charges or encumbrances which may constitute a lien upon the [subject properties]." (ECF No. 43, Ex. G at 2; *id.*, Ex. H. at 2; *id.*, Ex. I at 2.) The Note 14 Deeds of Trust also include provisions regarding events of default that, as relevant here, are identical to the corresponding provisions in the Note 3 Deed of Trust. (*See id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.) These provisions provide the following, in pertinent part:

> EVENTS OF DEFAULT. Grantor shall be in default under this [Note 14] Deed of Trust upon the occurrence of any of the following:
>
> (a)  Default in the payment or performance of any of the [d]ebt [pursuant to Note 14], or of any covenant or warranty, in this [Note 14] Deed of Trust, in [Note 14] or other [d]ocuments, or in any other note of [g]rantor or [b]orrower to [Plaintiff] or any contract between [g]rantor or [b]orrower and [Plaintiff]; or in any other contract between [b]orrower and [Plaintiff] made for the benefit of [g]rantor; or
>
> . . .
>
> (g)  The sale . . . , transfer or encumbrance of all or any part of the [subject properties] or any interest therein, or any change in the ownership or control of [g]rantor or [b]orrower, without [Plaintiff's] prior written consent . . . .

(*Id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.) The Note 14 Deeds of Trust also include the following relevant remedy for Plaintiff upon Defendants' default: "Upon the occurrence of any event of default, and after having given any required notice, [Plaintiff] may, at its option, without

further notice to [Defendants], . . . declare the [debt pursuant to Note 14] to be immediately due and payable in full . . . ." (*Id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.)

As a part of the agreements regarding Note 14, Defendants Farris Sayer and David Sayer also each individually entered into Guarantee Agreements, dated December 22, 2009, "[a]s an inducement to [Plaintiff] . . . to extend credit to and to otherwise deal with [Defendant Sayer Brothers]" (the "Note 14 Guarantees"). (ECF No. 43, Ex. J.) The Note 14 Guarantees provide that Defendants Farris Sayer and David Sayer "jointly and severally . . . guarantee to [Plaintiff] . . . the due and punctual payment of any and all notes, . . . debts, obligations and liabilities . . . of [Defendant Sayer Brothers] . . . incurred with or held by [Plaintiff]." (*Id.* at 1 & 4.)

## B.   Plaintiff's Internal Correspondence

In an internal e-mail exchange on February 7, 2014, two of Plaintiff's employees had a discussion regarding Defendants. (*See* ECF No. 54, Ex. D.) This exchange included the following, in pertinent part:

> [Employee 1:] [Defendant Sayer Brothers] are a case. I have worked with them quite a while and I don't see them ever changing. They just don't want to give up their real estate, but for some reason, won't pay the taxes on it.
>
> [Employee 2:] I'm going to have to shock them into reality because of the big issues they have with consumer collateral on commercial debt now. We can't renew it and frankly they need a real mortgage on the residence that will escrow. I've pushed for current financials since they came to us and going to try to come up with some suggestions. I know it isn't going to be easy but Patrick says they are looking really frail and they can't take it with them.

(*Id.*)

## C.     Plaintiff's Demand Letters

### 1.     <u>Note 3</u>

Plaintiff sent a letter, dated February 28, 2014, to Defendants Farris Sayer and David Sayer regarding alleged events of default under Note 3 and the Note 3 Deed of Trust (the "Note 3 Demand Letter"). (ECF No. 43, Ex. C.) In the Note 3 Demand Letter, Plaintiff provided the following statement regarding these purported events of default:

> An event of default has occurred with respect to the [l]oan [related to Note 3] as a result of the failure of [Defendants Farris Sayer and David Sayer] to tender payment in full of all principal, accrued interest and fees and other charges when [Note 3] matured on December 13, 2013. Additionally, a tax lien for the delinquent 2012 real estate taxes on the [Note 3] Property has been sold by the Kanawha County Sheriff to a third party, which also constitutes a default with respect to the [l]oan [related to Note 3]. The foregoing is in no way intended to be a complete list of all defaults which constitute an event of default under [Note 3] or the other documents.

(*Id.* at 1–2.) Plaintiff also stated that, "[i]n order to cure the default," Defendants Farris Sayer and David Sayer "must remit payment to [Plaintiff]" of the outstanding balance for Note 3 "no later than . . . March 10, 2014." (*Id.* at 2.) Plaintiff further noted that it "shall immediately accelerate all sums due under [Note 3]" if Plaintiff "fails to receive payment" of the outstanding balance by that date. (*Id.*)

Plaintiff asserts that "Defendants[] failed to cure their defaults by March 10, 2014." (ECF No. 44 at 3.) However, Plaintiff acknowledges that the Note 3 Property "was subsequently redeemed by [Plaintiff] and . . . Defendants reimbursed [Plaintiff] for the 2012 taxes paid." (*Id.* at 3 n.1.)

10

2.    Note 12

Plaintiff sent a letter, also dated February 28, 2014, to Defendants Sayer Brothers, Farris Sayer, and David Sayer regarding alleged events of default related to Note 12, the Note 12 Deed of Trust, and the Note 14 Guarantees (the "Note 12 Demand Letter"). (ECF No. 43, Ex. E.) In the Note 12 Demand Letter, Plaintiff provided the following statement regarding these purported events of default:

> An event of default has occurred with respect to the [l]oan [related to Note 12] as a result of the failure of [Defendant Sayer Brothers] to tender payment in full of all principal, accrued interest and fees and other charges when [Note 12] matured on July 3, 2013. Additionally, a tax lien for the delinquent 2011 real estate taxes on the [Note 12] Property has been sold by the Kanawha County Sheriff to [a third party], which also constitutes a default with respect to the [l]oan [related to Note 12]. The [Note 12] Property must be redeemed prior to March 31, 2014; otherwise a tax deed will be issued to the purchaser of the tax lien. Moreover, the first half of the 2013 real estate taxes were due on September 1, 2013 and have not been paid as of the date of this letter. The foregoing is in no way intended to be a complete list of all defaults which constitute an event of default under [Note 12] or the other documents.

(*Id.* at 2.) Plaintiff then stated that, "[i]n order to cure the default," Defendants Farris Sayer and David Sayer "must remit payment to [Plaintiff]" of the outstanding balance for Note 12 "no later than . . . March 10, 2014." (*Id.*) Plaintiff further noted that Plaintiff "shall immediately accelerate all sums due under [Note 12]" if Plaintiff "fails to receive payment" of the outstanding balance by that date. (*Id.*)

Plaintiff asserts that Defendant "Sayer Brothers failed to cure the default" of Note 12 "by March 10, 2014." (ECF No. 44 at 4.)

3.    Note 14

Plaintiff sent a letter, similarly dated February 28, 2014, to Defendants Sayer Brothers, Farris Sayer, and David Sayer regarding alleged events of default related to Note 14, the Note 14

11

Deeds of Trust, and the Note 14 Guarantees (the "Note 14 Demand Letter"). (ECF No. 43, Ex. K.) In the Note 14 Demand Letter, Plaintiff provides the following statement regarding these alleged events of default:

> An event of default has occurred with respect to the [l]oan [related to Note 14] as a result of the sale by the Kanawha County Sheriff of tax liens for delinquent real estate taxes for the [Note 14 Properties]. Specifically, a tax lien for the delinquent 2011 real estate taxes for the 4200 Kanawha Avenue Property has been sold by the Kanawha County Sheriff to [a third party], and must be redeemed prior to March 31, 2014; and a tax lien for the delinquent 2012 real estate taxes for the 4210 Kanawha Avenue Property has been sold by the Kanawha County Sheriff to a third party, and must be redeemed prior to March 31, 2015. We have been informed that a tax lien for the delinquent 2011 real estate taxes for the 4202 Kanawha Avenue Property was sold by the Kanawha County Sheriff to [a third party], but that [Defendant Sayer Brothers] recently redeemed this property. Additionally, the first half of the 2013 real estate taxes for the 4200 Kanawha Avenue Property and the 4202 Kanawha Avenue Property were due by September 1, 2013 and have not been paid as of the date of this letter. The foregoing is in no way intended to be a complete list of all defaults which constitute an event of default under [Note 14] or the other documents.

(*Id.* at 2.) Plaintiff stated that, "[i]n order to cure the default," Defendant Sayer Brothers "must remit evidence satisfactory to [Plaintiff] that all real estate taxes have been paid to a current status and, as applicable, all of the [Note 14 Properties] ha[ve] been redeemed, by no later than . . . March 10, 2014." (*Id.* at 3.) Plaintiff further noted that it "shall immediately accelerate all sums due under [Note 14]" if Plaintiff "fails to receive satisfactory evidence of the payment of the taxes and/or redemption of the [Note 14 Properties]" by March 10, 2014. (*Id.*)

Plaintiff contends that "Defendants failed to cure their defaults" under Note 14 "by March 10, 2014." (ECF No. 44 at 7.) Defendants concede that they failed to timely pay the real estate taxes for the three Note 14 Properties in 2011, 2012, and 2013. (ECF No. 43, Ex. L at 6–13.) The parties are in agreement, however, that Defendants "ultimately paid the taxes owed on the Note 14

[Properties]," (ECF No. 44 at 7 n.4), and these taxes are current up to the real estate taxes for 2014, (ECF No. 43, Ex. L at 6–13).

## D.    The Parties' Negotiations

Between March 2014 and January 2015, the parties engaged in negotiations to resolve their disagreements regarding Defendants' alleged defaults and Plaintiff's acceleration of the balances due under Note 3, Note 12, and Note 14. (*See* ECF No. 53, Exs. O–R, T (constituting e-mail correspondences between the parties regarding Note 3, Note 12, and Note 14).) During this time period, Defendant "Sayer Brothers paid the balance due and owing on Note 12." (ECF No. 44 at 4 n.2; *see also* ECF No. 53, Ex. S (constituting a letter from Defendants' counsel to Plaintiff, which notes that Defendants paid to Plaintiff the remaining balance under Note 12 and reimbursed Plaintiff for the property taxes associated with the Note 12 Property)); ECF No. 50 at 2 (providing Defendants' assertion that, "[o]n September 17, 2014, . . . Defendants sold the [Note 12 Property] and paid Note 12 in full").) As a result, "the balance of Note 12" is no longer at issue in this case. (ECF No. 44 at 4 n.2; *see also* ECF No. 42 (constituting the operative complaint).) However, the parties' negotiations did not yield an explicit agreement regarding Note 3 or Note 14. (*See, e.g.*, ECF No. 53 at 1 (providing Plaintiff's contention that "the parties were engaged in discussions toward a potential forbearance agreement prior to the litigation and after the institution of the litigation; however, terms for a forbearance agreement were not reached"); *cf.* ECF No. 50 at 5–7 (constituting Defendants' argument that the parties modified the Agreements through their subsequent conduct).)

Plaintiff asserts that the balances of Note 3 and Note 14 remain outstanding to date. (*See, e.g.*, ECF No. 44 at 3 & 7.) Plaintiff further avers that, "[a]s of July 2, 2015, the balance due and

owing pursuant to Note 3 was $148,062.56," (*id.* at 3), and "the balance due and owing pursuant to Note 14 was $709,081.64," (*id.* at 7).

**E.      The Parties' Conduct and Plaintiff's Monthly Correspondences to Defendants**

At some point following the parties' executions of Note 3, Note 12, and Note 14, Plaintiff began directly collecting the monthly rents accrued from the Note 3 Property and the Note 12 Property. (*See, e.g.*, ECF No. 50 at 2.) Beginning in April 2014—*i.e.* the month after the deadline provided in Plaintiff's demand letters to Defendants—Plaintiff sent monthly correspondences to Defendants regarding "Payment(s)" on the three promissory notes (the "Payment Correspondences"). (*See* ECF No. 54, Exs. A–C (providing Plaintiff's monthly Payment Correspondences to Defendants between April 2014 and June 2015, but excluding a correspondence for September 2014).) The Payment Correspondences provided an itemized "breakdown" for (1) the monthly rents Plaintiff collected on the Note 3 Property and the Note 12 Property; (2) the amounts subtracted from these rents towards the balances for Note 3, Note 12, and Note 14; and (3) the "Total Remainder" for the three promissory notes following the subtraction of the rents for the Note 3 Property and the Note 12 Property. (*See id.*, Exs. A & B.) The Payment Correspondences also provided a monthly "[p]ayment [d]ue [d]ate," "[p]rincipal [d]ue," "[i]nterest [d]ue," and "[t]otal [d]ue" for each of Note 3, Note 12, and Note 14. (*Id.*)

Plaintiff continued to send the Payment Correspondences to Defendants after Defendants sold the Note 12 Property and paid the remaining balance of Note 12. (*See id.*, Ex. C (providing the Payment Correspondences between October 2014 and June 2015).) These Payment Correspondences similarly included a "breakdown" of (1) the monthly rent collected for the Note 3 Property; (2) the amount subtracted from this rent towards the balance of Note 3 and Note 14;

14

(3) the "[t]otal [r]emainder" due following this subtraction; and (4) the monthly "[p]ayment [d]ue [d]ate," "[p]rincipal [d]ue," "[i]nterest [d]ue," and "[t]otal [d]ue" for both Note 3 and Note 14. (*Id.*) These Payment Correspondences also included a statement from Plaintiff that it "need[ed] a check or authorization to debit [Defendant] Sayer Brother's account . . . at [Plaintiff] for the remaining balance." (*Id.* at 1–10.)

The "[t]otal [d]ue" provided in the Payment Correspondences were close to or identical to the "consecutive [m]onthly installments" under the three promissory notes and the applicable modification agreements. (*Compare* ECF No. 54, Ex. A at 1 (constituting a correspondence from Plaintiff to Defendants with the subject line "April 2014 Payment" and listing the total due as $1,656.97 for Note 3, $1,622.23 for Note 12, and $6,028.08 for Note 14), *with* ECF No. 43, Ex. A at 5 (providing the February 25, 2010 Note Modification Agreement for Note 3, which states that the parties agree to "consecutive [m]onthly installments" of "$1,613.00"), *id.*, Ex. D at 17 (constituting the July 3, 2012 Note Modification Agreement for Note 12, which states that the parties agree to "consecutive [m]onthly installments" of "$1,622.33"), *and id.*, Ex. F at 5 (providing the May 24, 2010 Note Modification Agreement for Note 14, which states that the parties agree to "consecutive [m]onthly installments" of "$6,028.08").) The final Payment Correspondence included in the record is for June 2015. (*See* ECF No. 53, Ex. C at 11.)

Defendants made all monthly payments to Plaintiff for Note 3 and Note 14 requested in the Payment Correspondences. (*See, e.g.*, ECF No. 50 at 3.) Plaintiff accepted each of these payments. (*Id.*)

**F.      Procedural Posture**

Plaintiff filed its initial complaint on June 30, 2014, (ECF No. 1)—during the time period when the parties engaged in negotiations, (*see, e.g.*, ECF No. 53, Exs. O–R, T). Plaintiff's initial complaint included breach-of-contract claims relating to Note 3, Note 12, and Note 14. (*See* ECF No. 1 ¶¶ 55–73.) After Defendants paid the remaining balance on Note 12, Plaintiff filed a Motion for Leave to Amend Complaint (the "Motion to Amend") on January 30, 2015. (ECF No. 20.) The Motion to Amend included an attached proposed amended complaint, which (1) "add[ed] as defendants Farris Sayer and David Sayer, in their capacities as Trustees of the Testamentary Trusts of David F. Sayer and Alex F. Sayer;" and (2) "remove[d] allegations pertaining to [Note 12] from the [c]omplaint." (ECF No. 20 at 2.) By its order entered on May 29, 2015, the Court granted the Motion to Amend. (ECF No. 37.) As such, Plaintiff's proposed amended complaint (the "Amended Complaint"), (ECF No. 42), is now the operative complaint in this action.

The Amended Complaint includes two causes of action: (1) Count I—a breach of contract claim against Defendants Farris Sayer and David Sayer relating to Note 3, (*id.* ¶¶ 38–46); and (2) Count II—a breach of contract claim against all Defendants pertaining to Note 14, (*id.* ¶¶ 47–55). The Amended Complaint requests the following relief: (1) an "award" of "the balance due and owing [Plaintiff] under the terms of Note 3 and the [Note 3] Deed of Trust;" (2) an "award" of "the balance due and owing [Plaintiff] under the terms of Note 14, [the Note 14 Deeds of Trust], and the Note 14 [Guarantees];" and (3) an "award" of Plaintiff's "costs and expenses," such as attorneys' fees. (*Id.* at 11.)

Plaintiff filed Plaintiff's Motion on July 6, 2015. (ECF No. 43.) Defendants filed their opposition to this motion on August 3, 2015, (ECF No. 54), and Plaintiff filed its reply in support of Plaintiff's Motion on August 10, 2015, (ECF No. 56).

On July 20, 2015, Defendants filed Defendants' Motion. (ECF No. 49.) Plaintiff filed its opposition to Defendants' Motion on July 27, 2015, (ECF No. 53), and Defendants filed their reply in support of their motion on August 10, 2015, (ECF No. 55).

As such, both Plaintiff's Motion and Defendants' Motion are fully briefed and ready for disposition.[1]

## II.  *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to"

---

[1] On March 26, 2015, Plaintiff filed a Motion for Determination of Sufficiency of Responses to Requests for Admission and to Compel Discovery Responses from Defendants (the "Motion to Compel"). (ECF No. 27.) The Motion to Compel remained unresolved at the time the parties briefed both Plaintiff's Motion and Defendants' Motion. Magistrate Judge Dwane L. Tinsley subsequently granted the Motion to Compel on October 8, 2015. (ECF No. 68.)

On October 9, 2015, the Court held a telephonic status conference in this case. (ECF No. 69.) During this status conference, the parties both stated that they did not require additional briefing to address the issues raised in the Motion to Compel. Instead, the parties noted that the present briefing relating to Plaintiff's Motion and Defendants' Motion is sufficient for the Court to rule on these motions.

the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. Discussion

Plaintiff argues that it is entitled to summary judgment on its breach-of-contract claims because Defendants "breached Note 3 and Note 14" and, under the parties' agreements, Plaintiff was permitted to accelerate the Debts. (ECF No. 44 at 8–10.) Defendants assert that they are entitled to summary judgment on numerous grounds: (1) there was no breach of Note 14 and its associated agreements, (ECF No. 55 at 7–8); (2) the Payment Correspondences and the parties'

18

conduct related to these communications constitute modifications of the terms of Note 3 and Note 14, (*see, e.g.*, ECF No. 50 at 5–7); (3) Plaintiff waived Defendants' defaults and Plaintiff's right to accelerate the Debts, (*see* ECF No. 54 at 14; ECF No. 55 at 11); (4) Plaintiff was estopped from accelerating the Debts, (*see, e.g.*, ECF No. 50 at 7–8); and (5) Plaintiff's conduct in accelerating the Debts breached the implied covenant of good faith and fair dealing, (*see* ECF No. 55 at 11–12).[2] For the reasons that follow, the Court finds that neither party is entitled to summary judgment on any of these issues.

## A.      Breach of Contract

Plaintiff argues that Defendants breached Note 3 and Note 14 and, as such, it is entitled to summary judgment on the Amended Complaint's two breach-of-contract claims. (*See* ECF No. 44 at 8–10.) Defendants respond, in relevant part, that they did not default under Note 14 or its associated agreements and are themselves entitled to summary judgment as to the breach-of-contract claim relating to Note 14—Count II.[3] (ECF No. 55 at 7–8.)

---

[2] Defendants also argue that Plaintiff is not entitled to summary judgment on its breach-of-contract claims because Plaintiff failed to "properly support" its motion. (ECF No. 54 at 10–12.) In particular, Defendants argue that Plaintiff failed to provide evidence regarding the current outstanding balance of the Debts or Plaintiff's request for attorneys' fees. (*See id.*)

Plaintiff subsequently supplemented the record with itemized account information that details the outstanding balance of the Debt. (*See* ECF No. 56, Ex. A.) As such, Defendants' argument that Plaintiff failed to properly support its motion regarding the balance of the Debts is now moot.

As to the issue of attorneys' fees, Plaintiff's Motion does not request a specific amount for such costs. (*See* ECF No. 44.) The Court will address Plaintiff's request for attorney's fees and the potential amount of such—if ever warranted—at the time that such a determination is appropriate. *Cf. Koontz v. Wells Fargo N.A.*, Civil Action No. 2:10–cv–00864, 2013 WL 1337260 (S.D. W. Va. Mar. 29, 2013) (providing the Court's statement regarding the standard it employs with regards to requests for attorneys' fees).

Accordingly, the Court **DENIES** Defendants' Motion, insofar as Defendants argue that Plaintiff failed to properly support Plaintiff's Motion.

[3] Plaintiff argues that Defendants' opposition to Plaintiff's Motion was "untimely and should be stricken from the record." (ECF No. 56 at 2–3.) Specifically, Plaintiff contends that "Defendants' [opposition] was required to be filed no later than July 23, 2015," but Defendants filed their opposition "on August 3, 2015." (*Id.* at 2.)

The Court finds that this argument is utterly without merit. In its scheduling order entered on November 18, 2014, the Court ordered the parties to file and serve any summary judgment or other dispositive motions "by July 20, 2015, with responses due by August 3, 2015, and replies due by August 10, 2015." (ECF No. 14 ¶ 4.) Defendants filed their opposition brief on August 3, 2015, (*see* ECF No. 54)—the last day permitted by the Court's scheduling order,

"In order to establish a claim for breach of contract under West Virginia law, a plaintiff must prove the following elements . . . : (1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result." *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, Civil Action No. 2:09–cv–01278, 2011 WL 3022239, at *10 (S.D. W. Va. July 22, 2011) (citing *Exec. Risk, Inc. v. Charleston Area Med. Ctr. Inc.*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009)). A breach-of-contract claim "can be based upon," among other things, "a provision in the deed of trust, . . . or upon a new contract to modify . . . ." *Hanshaw v. Wells Fargo Bank, N.A.*, Civil Action No. 2:14–cv–28042, 2015 WL 5345439, at *17 (S.D. W. Va. Sept. 11, 2015) (alterations in original) (quoting *Smallwood v. Sovereign Bank, F.S.B.*, Civil Action No. 3:11–CV–87, 2012 WL 243744, at *8 (N.D. W. Va. Jan. 25, 2012)).

   1.   Count I—Note 3

   Regarding Count I, the record reflects—and Defendants do not otherwise contest—that (1) Note 3 and the Note 3 Deed of Trust are valid and enforceable contracts; (2) Plaintiff performed under these contracts by providing the loans to Defendants; (3) Defendants Farris Sayer and David Sayer defaulted under the terms of Note 3 and the Note 3 Deed of Trust by failing to pay the full remaining balance under Note 3 by the maturity date—December 11, 2013—and permitting a tax lien to attach to the Note 3 Property for delinquent 2012 real estate taxes; and (4) Plaintiff was injured by Defendants' breach of these agreements, at least insofar as Defendants' debt to Plaintiff

---

(*see* ECF No. 14 ¶ 4). The Court therefore finds that Defendants' opposition brief was timely. Accordingly, the Court **DENIES** Plaintiff's request to strike Defendants' opposition to Plaintiff's Motion. (ECF No. 56 at 2–3.) *See generally United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993) (noting the Fourth Circuit's "strong policy that cases be decided on their merits").

under Note 3 remains outstanding despite the purported breaches. (*See, e.g.*, ECF No. 44 at 2–7.) The Court therefore finds that Plaintiff has established each of the elements of its breach-of-contract claim in Count I relating to Note 3 and the Note 3 Deed of Trust. *See, e.g.*, *Kanawha-Gauley Coal & Coke Co.*, 2011 WL 3022239, at *10 (providing the elements of a breach-of-contract claim under West Virginia law (citation omitted)). However, as discussed at length below, these findings do not mean that Plaintiff is entitled to summary judgment as to Count I.

    2.  <u>Count II—Note 14</u>

The Court similarly finds that Plaintiff has established each of the elements for its breach-of-contract claim relating to Note 14. The record again reflects—and Defendants do not otherwise contest—that (1) Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees are valid and enforceable contracts; (2) Plaintiff performed under these contracts by providing the requisite loans to Defendants; and (3) Plaintiff was injured by Defendants' breach of these contracts, at least insofar as Defendants' debt to Plaintiff under Note 14 remains outstanding despite the purported breaches. (*See, e.g.*, ECF No. 44 at 4–7.)

The focal point of the parties' dispute as to Count II pertains to the third element of a breach-of-contract claim—whether Defendants breached or violated their obligations under Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees. Plaintiff argues that Defendants breached these agreements in two ways. First, Plaintiff contends that Defendants breached the terms of these agreements by "fail[ing] to pay the full and remaining amount of the principal and interest due and owning" on Note 12 by its maturity date—July 3, 2013. (ECF No. 44 at 9.) The Court agrees.

21

Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees each provide that Defendants default on these contracts if they fail to fulfill their other contractual obligations to Plaintiff. In particular, Note 14 provides the following, in pertinent part, regarding events of default:

> The failure to pay any part of the principal or interest when due on [Note 14] or to fully perform any covenant, obligation or warranty on this or on any other liability to [Plaintiff] by . . . [Defendant Sayer Brothers], by any affiliate of [Defendant Sayer Brothers] . . . , or by any guarantor or surety of [Note 14] . . . or in the event of a default pursuant to . . . any other obligation of . . . [Defendant Sayer Brothers] or any [o]bligor in favor of [Plaintiff] . . . shall be a material default hereunder and [Note 14] and other debts due [Plaintiff] by . . . [Defendant Sayer Brothers] shall immediately become due and payable without notice, at the option of [Plaintiff].

(ECF No. 43, Ex. F at 2.) Under this language, the "borrower"—Defendant Sayer Brothers—defaulted on Note 14 when Defendant Sayer Brothers failed to "fully perform" under Note 12 by not paying the full remaining balance for that promissory note by the maturity date. (*See id.*)

The Note 14 Deeds of Trust, in turn, provides that the signatory Defendants "shall be in default under this [Note 14] Deed of trust upon . . . [a] [d]efault in the payment or performance of . . . any covenant or warranty, in this [Note 14] Deed of Trust, in [Note 14] or other [d]ocuments." (*Id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.) Under this language, Defendant Sayer Brothers' default under Note 14 resulted in Defendants' default under the Note 14 Deeds of Trust. (*See id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.)

Similarly, the Note 14 Guarantees provide that Defendants Farris Sayer and David Sayer "jointly and severally . . . guarantee to [Plaintiff] . . . the due and punctual payment of any and all notes, . . . debts, obligations and liabilities . . . of [Defendant Sayer Brothers] . . . incurred with or held by [Plaintiff]." (*Id.*, Ex. J at 1 & 4.) Pursuant to these agreements, Defendants Farris Sayer

and David Sayer breached the Note 14 Guarantees when Defendant Sayer Brothers failed to pay the remaining balance under Note 12 by its maturity date. (*See id.*)

As such, Defendant Sayer Brother's default under Note 12 resulted in Defendants' defaults under Note 14 and the Note 14 Guarantees. (*See id.*, Ex. F at 2 (Note 14); *id.*, Ex. J at 1 & 4 (the Note 14 Guarantees).) Defendant Sayer Brother's default under Note 14 then correspondingly resulted in Defendants' default under the Note 14 Deeds of Trust. (*See id.*, Ex. G at 4 (the First Note 14 Deed of Trust); *id.*, Ex. H. at 4 (the Second Note 14 Deed of Trust); *id.*, Ex. I at 4 (the Third Note 14 Deed of Trust).)

In the Note 12 Demand Letter, Plaintiff provided an opportunity for Defendant Sayer Brothers to cure its default under Note 12 by March 10, 2014. (*See id.*, Ex. E at 2.) Defendant Sayer Brothers failed to cure its default by that date and breached its Note 12 contract with Plaintiff. This failure to cure the default under Note 12 resulted in Defendants' breach of Note 14 and the Note 14 Guarantees, as well as a breach of the Note 14 Deeds of Trust through the breach of Note 14. (*See id.*, Ex. F at 2 (Note 14); *id.*, Ex. J at 1 & 4 (the Note 14 Guarantees); *id.*, Ex. G at 4 (the First Note 14 Deed of Trust; *id.*, Ex. H. at 4 (the Second Note 14 Deed of Trust); *id.*, Ex. I at 4 (the Third Note 14 Deed of Trust).)

The Court therefore finds that Defendants breached Note 14 and the Note 14 Guarantees by Defendant Sayer Brothers breaching its obligations under Note 12.[4] The Court further finds

---

[4] In their reply in support of Defendants' Motion, Defendants argue that the alleged breach in Count II "rest[s] solely on . . . the failure to pay taxes, which have [subsequently] been paid" and not on an alleged breach of Defendant Sayer Brothers' obligations under Note 12. (ECF No. 55 at 7–8.) This argument demonstrates a remarkable misreading of Plaintiff's cause of action pertaining to Note 14 and its related documents. Count II does not specify an alleged breach. (*See* ECF No. 42 ¶¶ 47–55.) Rather, Count II avers only that Defendants are "in default" under Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees and, "[b]y virtue of the defaults, . . . Defendants are in breach of the terms" of these contracts. (*See id.* ¶¶ 49–50.) The Court therefore finds that Count II does not limit Defendants' alleged breaches of Note 14 solely to Defendants' failure to pay taxes on the Note 14 Properties.

that Defendants breached the Note 14 Deeds of Trust due to Defendant Sayer Brothers' breach of Note 14.

Second, Plaintiff argues that Defendants "failed to timely pay taxes on the Note 14 [Properties] as required under the loan documents, allowing liens against the Note 14 [Properties]." (ECF No. 44 at 7.) Plaintiff asserts that these "tax liens were sold" and "[e]ach tax sale constitutes a default under the terms of Note 14 and the applicable Note 14 Deeds of Trust." (*Id.*) The Court again agrees.

Note 14 provides that Defendant Sayer Brothers defaults on this instrument, in relevant part, if there is "a default pursuant to [the Note 14 Deeds of Trust]." (ECF No. 43, Ex. F at 2.) The Note 14 Deeds of Trust, in turn, require the signatory Defendants to "make timely payment of all ad valorem taxes, assessments or other charges or encumbrances which may constitute a lien upon the [subject properties]." (*Id.*, Ex. G at 2; *id.*, Ex. H. at 2; *id.*, Ex. I at 2.) The Note 14 Deeds of Trust further state that the signatory Defendants default on these agreements if there is an "encumbrance of all or any part of the [subject properties] or any interest therein, or any change in the ownership or control of [g]rantor or [b]orrower, without [Plaintiff's] prior written consent." (*Id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.)

There is no dispute that Defendants failed to timely pay taxes on the Note 14 Properties, which resulted in the sale of tax liens on these properties. (*See, e.g.*, ECF No. 43, Ex. L at 6–13 (constituting Defendant David Sayer's responses to Plaintiff's requests for admissions).) Both of these events constituted a default under the Note 14 Deeds of Trust. (*See id.*, Ex. G at 4; *id.*, Ex. H. at 4; *id.*, Ex. I at 4.) These events of default then resulted in Defendant Sayer Brothers' default under the terms of Note 14. (*See id.*, Ex. F at 2.) As noted above, a default under either Note 14 or

24

the Note 14 Deeds of Trust also results in a default by Defendants Farris Sayer and David Sayer under the Note 14 Guarantees. (*See id.*, Ex. J at 1 & 4.) Defendants' failure to pay taxes and the resulting encumbrances on the Note 14 Properties therefore also resulted in a default under the Note 14 Guarantees. (*See id.*)

Defendants nonetheless argue that these tax-related defaults are not actionable because Defendants subsequently cured these defaults by paying the outstanding property taxes on the Note 14 Properties, which also resulted in the elimination of the tax liens on these properties. (*See* ECF No. 55 at 8.) In the Note 14 Demand Letter, Plaintiff stated that, "[i]n order to cure the default," Defendant Sayer Brothers "must remit evidence satisfactory to [Plaintiff] that all real estate taxes have been paid to a current status and, as applicable, all of the [Note 14 Properties] ha[ve] been redeemed, by no later than . . . March 10, 2014." (*See* ECF No. 43, Ex. K at 3.) However, Defendant Sayer Brothers failed to resolve the defaults related to its failure to pay property taxes by March 10, 2014. Indeed, the record indicates that Defendants did not resolve the tax-related defaults for the Note 14 Properties until six months later when Defendants sold the Note 12 Property. (*See, e.g.*, ECF No. 44 at 7 n.4.) As such, Plaintiff provided notice to Defendants regarding their tax-related defaults under Note 14 and gave Defendants an opportunity to cure these defaults in a timely fashion. (*See, e.g.*, ECF No. 43, Ex. K.) However, Defendants failed to timely cure these defaults, thereby violating their obligations under Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees.

The Court therefore finds that Defendants breached their obligations under the Note 14 Deeds of Trust when they failed to timely pay taxes on the Note 14 Properties, as well as when they permitted tax liens to be placed on these properties. The Court also finds that Defendant Sayer

Brothers breached the terms of Note 14 when Defendants breached the Note 14 Deeds of Trust. Finally, the Court also finds that the individual Defendants breached the Note 14 Guarantees through the breaches of Note 14 and the Note 14 Deeds of Trust.

In summary, the Court finds that Plaintiff has established all of the elements of its breach-of-contract claim relating to Note 3 and Note 14. However, these findings do not end the instant analysis. Defendants contend that, regardless of any breach of these agreements, Defendants themselves are entitled to summary judgment due to (1) the parties' alleged modifications of their contracts, (*see, e.g.*, ECF No. 50 at 5–7); (2) Plaintiff's purported waiver of its right to accelerate the Debts, (*see* ECF No. 54 at 14; ECF No. 55 at 11); (3) the doctrine of equitable estoppel, (*see, e.g.*, ECF No. 50 at 7–8); and (4) Plaintiff's alleged breach of the implied covenant of good faith and fair dealing, (*see* ECF No. 55 at 11–12). The Court now turns to these arguments.

**B.      Modification**

Defendants first argue that the parties' subsequent conduct relating to the Payment Correspondences constitutes a modification of the parties' contracts and that Defendants are not in breach of these modified agreements. (*See, e.g.*, ECF No. 50 at 5–7.) Defendants move for summary judgment on these modification grounds, (*see id.*), as well as for denial of Plaintiff's Motion on this basis, (*see* ECF No. 54 at 4–10). The Court agrees with Defendants' position to the extent they argue that there are genuine issues of material fact as to whether the parties' conduct constituted a modification of Note 3 and Note 14, as well as the associated agreements.

"It is a well-established, fundamental principle of contract law that a valid, unambiguous written contract may be modified or superseded by a subsequent contract based on a valuable consideration." *Thornsbury v. Cabot Oil & Gas Corp.*, 749 S.E.2d 569, 573 (W. Va. 2013). "To

demonstrate the parties committed themselves to a separate . . . agreement, entered subsequent to the [original contract], which would modify the terms of the [original contract]," the party seeking the modification "must show the parties expressly agreed to any such modification, and any such modification had all of the requisites of a valid and enforceable contract, including mutual assent and separate identifiable consideration." *Wood Cty. Airport Auth. v. Crown Airways, Inc.*, 919 F. Supp. 960, 967 (S.D. W. Va. Mar. 25, 1996) (citations omitted). The Court "can consider subsequent evidence to demonstrate that the parties entered into a new contract, upon consideration, which abrogates prior written contracts or that the parties engaged in a course of conduct which constituted a modification." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 724 (S.D. W. Va. 2009) (citations omitted). "The burden rests on the party seeking to establish the modification, who must demonstrate by clear and positive evidence that there was a meeting of the parties' minds on the modification." *Id.* (citation omitted).

In West Virginia, as elsewhere, "[t]he elements of a contract are an offer and an acceptance supported by consideration." *Elk River Pipeline LLC v. Equitable Gathering LLC*, Civil Action No. 2:10–cv–01080, 2013 WL 164151, at *9 (S.D. W. Va. Jan. 15, 2013) (citations omitted); *see also State ex rel. AMFM, LLC v. King*, 740 S.E.2d 66, 73 (W. Va. 2013) ("[T]he fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent." (quoting *Virginian Exp. Coal Co. v. Rowland Land Co.*, 131 S.E.2d 253, 254 (W. Va. 1926))). There is no valid contract if one of these essential elements is absent. *See, e.g.*, *King*, 740 S.E.2d at 73 ("There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." (quoting *Virginian Exp. Coal Co.*, 131 S.E.2d at 254)).

27

"A meeting of the minds is a *sine qua non* of all contracts." *Riner v. Newbraugh*, 563 S.E.2d 802, 804 (W. Va. 2002) (quoting *Martin v. Ewing*, 164 S.E. 859, 859 (W. Va. 1932)). "A modification of a contract requires the assent of both parties to the contract and a mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract." *Wheeling Downs Racing Ass'n v. W. Va. Sportservice, Inc.*, 199 S.E.2d 308, 309 (W. Va. 1973). "The contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 664 S.E.2d 751, 759 (W. Va. 2008) (citation omitted). "In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other." *Ways v. Imation Enters. Corp.*, 589 S.E.2d 36, 44 (W. Va. 2003) (quoting *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450 (W. Va. 1993)). "Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract." *Id.* (quoting *Bailey*, 437 S.E.2d at 450–51). "A meeting of the minds 'may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied.'" *Elk River Pipeline LLC*, 2013 WL 164151, at *8 (quoting *Ways*, 589 S.E.2d at 44).

Additionally, "[t]hat consideration is an essential element of, and is necessary to the enforceability or validity of a contract is so well established that citation of authority therefor is unnecessary." *First Nat'l Bank of Gallipolis v. Marietta Mfg. Co.*, 153 S.E.2d 172, 177 (W. Va. 1967). "In contract formation '[a] valuable consideration may consist either in some right, interest, profit or benefit accruing to the one party or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other.'" *Elk River Pipeline LLC*, 2013 WL 164151, at *9

28

(alteration in original) (quoting *Tabler v. Hoult*, 158 S.E. 782, 782 (W. Va. 1931)); *see also id.* ("'Consideration' is 'some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.'" (quoting *First Nat'l Bank of Gallipolis*, 153 S.E.2d at 177)). "A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." *First Nat'l Bank of Gallipolis*, 153 S.E.2d at 177. However, in the context of contract modifications, "the original consideration of the [contract] can not be used as consideration for any agreement of modification or alteration in connection therewith." *Steinbrecher v. Jones*, 153 S.E.2d 295, 301 (W. Va. 1967) (citations omitted).

The Court finds that there are genuine issues of material fact as to whether the Payment Correspondences—and the parties' conduct relating to these documents—constitute valid modifications of Note 3 and Note 14, as well as the associated agreements. As to the offer requirement of contract formation, Plaintiff sent the Payment Correspondences each month between April 2014 and June 2015. (*See* ECF No. 54, Exs. A–C. *But see id.* (excluding a correspondence for September 2014).) These correspondences provided a "breakdown" for (1) the rent for the Note 3 Property, as well as the rent for the Note 12 Property prior to Defendants' sale of this property; (2) Plaintiff's use of these rents towards the monthly balances for Note 3, Note 12, and Note 14; (3) the "Total Remainder" for the three promissory notes following the subtraction of these rents; and (4) a monthly "[p]ayment [d]ue [d]ate," "[p]rincipal [d]ue," "[i]nterest [d]ue," and "[t]otal [d]ue" for each promissory note. (*See id.*) These total amounts due for each promissory note were not the accelerated balances that Plaintiff seeks through the instant litigation. (*See id.*) Rather, these total amounts due were close to or identical to the "consecutive

[m]onthly installments" under the promissory notes and the parties' prior modification agreements. (*Compare id.*, Ex. A at 1 (constituting the Payment Correspondence for April 2014, which lists the total amounts due as $1,656.97 for Note 3, $1,622.23 for Note 12, and $6,028.08 for Note 14), *with* ECF No. 43, Ex. A at 5 (providing the February 25, 2010 Note Modification Agreement for Note 3, which states that the parties agree to "consecutive [m]onthly installments" of $1,613.00), *id.*, Ex. D at 17 (constituting the July 3, 2012 Note Modification Agreement for Note 12, which states that the parties agree to "consecutive [m]onthly installments" of $1,622.33), *and id.*, Ex. F at 5 (providing the May 24, 2010 Note Modification Agreement for Note 14, which states that the parties agree to "consecutive [m]onthly installments" of $6,028.08).) A jury could construe Plaintiff's conduct in sending the monthly Payment Correspondences to Defendants requesting only monthly payments—*not* the total outstanding balance of the promissory notes—as an offer that Defendants may satisfy their outstanding obligations to Plaintiff under the promissory notes by only paying these monthly installments.

Regarding acceptance, Defendants assert—and Plaintiff does not contest—that Defendants remitted the full requested payment under each of the Payment Correspondences and Plaintiff accepted these payments. (*See, e.g.*, ECF No. 50 at 3.) A jury could similarly conclude that Defendants' payments—as requested by Plaintiff in the Payment Correspondences—constituted a valid acceptance of the offer provided in the Payment Correspondences.

As to mutual assent to the terms of these purported modifications, there are genuine issues of material fact as to whether Plaintiff's potential offer through the Payment Correspondences and Defendants' payments pursuant to these communications evince the parties' mutual understanding that they agreed to modify the terms of Note 3 and Note 14, as well as the associated documents.

Pursuant to this potential mutual understanding, Defendants would satisfy their obligations to Plaintiff under the promissory notes by making only the requested monthly payments, rather than the accelerated balance pursued by Plaintiff in this case. (*See* ECF No. 54, Exs. A–C.)

Plaintiff contends that there was no meeting of the minds regarding whether the Payment Correspondences altered the parties' agreements. (*See, e.g.*, ECF No. 56 at 8.) Instead, Plaintiff argues that it "was merely providing Defendants with an ongoing service, not with an offer of modification," (ECF No. 53 at 13 n.7), and that Defendants' payments to Plaintiff pursuant to the Payment Correspondences were only a "good faith" showing in connection with the parties' ongoing negotiations, (*see id.* at 8 n.5). Plaintiff does not cite any evidence in the record supporting these contentions. (*See* ECF No. 44 (providing Plaintiff's memorandum in support of Plaintiff's Motion); ECF No. 53 (constituting Plaintiff's opposition to Defendants' Motion); ECF No. 56 (providing Plaintiff's reply in support of Plaintiff's Motion).)

These assertions do not resolve the remaining factual issues surrounding the Payment Correspondences. The record could be construed as indicating that the Payment Correspondences and the parties' conduct related to such evince an agreement between the parties to modify the terms of Note 3 and Note 14, as well as their associated documents, to permit Defendants to remain current on their obligations relating to these agreements by only making monthly payments. (*See* ECF No. 54, Exs. A–C (constituting the Payment Correspondences).) The Court cannot resolve these factual issues at the summary judgment stage. *See, e.g.*, *Fed. Kemper Ins. Co. v. Wheeler*, 786 F. Supp. 565, 571 (S.D. W. Va. 1992) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." (citation omitted)). Instead, these issues are appropriately left to a jury.

Finally, regarding consideration, Defendants argue—and Plaintiff does not otherwise contest—that they suffered a detriment by making each requested monthly payment pursuant to the Payment Correspondences. (*See, e.g.*, ECF No. 50 at 6–7 (providing Defendants' assertion that they paid "the monthly amounts requested by Plaintiff" in the Payment Correspondences).) Plaintiff, for its part, has also received the benefit of immediate payments, as it requested in these communications. (*See, e.g.*, *id.* (providing Defendants' contention that Plaintiff accepted each of Defendants' payments pursuant to the Payment Correspondences).) A jury could find that this give-and-take constitutes valid consideration for the purported modifications pursuant to the Payment Correspondences. *See, e.g.*, *First Nat'l Bank of Gallipolis v. Marietta Mfg. Co.*, 153 S.E.2d 172, 177 (W. Va. 1967) ("A benefit to the promisor or a detriment to the promise is sufficient consideration for a contract.").

The Court thus finds that there are genuine issues of material fact as to whether the Payment Correspondences and the parties' conduct relating to these communications constitute valid modifications of the parties' agreements. If such modifications occurred, then Defendants did not breach Note 3 and Note 14, as well as the agreements related to these contracts, by failing to remit the full remaining balance of Note 3 and Note 14 pursuant to Plaintiff's acceleration of these Debts. Instead, Defendants would be current on these modified contractual terms due to their monthly payments pursuant to the Payment Correspondences. (*Cf.* ECF No. 50 at 6–7 (providing Defendants' contention that they paid "the monthly amounts requested by Plaintiff" in the Payment Correspondences).)

As there remain genuine issues of material fact regarding this modification issue, the Court finds that Plaintiff is not entitled to summary judgment on its breach-of-contract claims. The Court similarly finds that Defendants are also not entitled to summary judgment as to whether the parties modified their agreements.

Accordingly, the Court **DENIES** Plaintiff's Motion, insofar as Plaintiff requests summary judgment on its breach-of-contract claims and a finding that the Payment Correspondences and the parties' conduct relating to these communications do not constitute modifications of the terms of Note 3 and Note 14, as well as the associated agreements. The Court further **DENIES** Defendants' Motion, insofar as Defendants request summary judgment on whether the parties modified their agreements pursuant to the Payment Correspondences.

## C.    Waiver

Defendants argue that they are entitled to summary judgment as to Plaintiff's claims—even if there was no modification—because Plaintiff waived Defendants' defaults under the parties' agreements and Plaintiff's right to "accelerat[e] . . . the Notes" by "billing and accepting amounts" pursuant to the Payment Correspondences. (ECF No. 54 at 14; *see also* ECF No. 55 at 11 (requesting summary judgment "on the grounds discussed . . . in their response to Plaintiff's Motion").) Defendants further contend that, "[a]t the very least," these issues present "genuine issue[s] of material fact." (ECF No. 54 at 14.) The Court agrees with Defendants' position, insofar as they argue that the issue of waiver presents genuine issues of material fact.

Under West Virginia law, "[c]ontractual provisions or rights may be waived by subsequent agreement of the parties, and such a waiver may be demonstrated by the use of parol evidence." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 722 (S.D. W. Va.

2009) (citing *Ohio Valley Contractors, Inc. v. Bd. of Educ. of Wetzel Cty.*, 391 S.E.2d 891, 894 n.5 (W. Va. 1990) and *Mundy v. Arcuri*, 267 S.E.2d 454 (W. Va. 1980)). "A waiver is a voluntary act, and implies an election by the party to give up something of value, or to forego some advantage which he might, at his option, have insisted on and demanded." *Smith v. Bell*, 41 S.E.2d 695, 700 (W. Va. 1947); *see also Bd. of Educ. of Cty. of Wood v. Airhart*, 569 S.E.2d 422, 429 (W. Va. 2002) ("The concept of an actual waiver of one's established rights implies a voluntary act." (citation omitted)). As such, "[t]he doctrine of waiver focuses on the conduct of the party against whom waiver is sought, and requires that party to have intentionally relinquished a known right." *Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135, 142–43 (W. Va. 1998); *see also id.* at 142 ("[T]o establish waiver there must be evidence demonstrating that a party has intentionally relinquished a known right." (citation omitted)). *See generally id.* at 143 ("There is no requirement of prejudice or detrimental reliance by the party asserting waiver." (citations omitted)).

"Waiver may be established by express conduct or impliedly, through inconsistent actions." *Ara v. Erie Ins. Co.*, 387 S.E.2d 320, 323 (W. Va. 1989) (citing *Creteau v. Phoenix Assurance Co. of N.Y.*, 119 S.E.2d 336, 339 (W. Va. 1961)); *see also Potesta*, 504 S.E.2d at 142 ("This intentional relinquishment, or waiver, may be expressed or implied."). "However, where the alleged waiver is implied, there must be clear and convincing evidence of the party's intent to relinquish the known right." *Potesta*, 504 S.E.2d at 142 (*Hoffman v. Wheeling Sav. & Loan Ass'n*, 57 S.E.2d 725, 735 (W. Va. 1950)). "Furthermore, '[t]he burden of proof to establish waiver is on the party claiming the benefit of such waiver, and is never presumed.'" *Id.* (alteration in original) (quoting *Hoffman*, 57 S.E.2d at 735); *see also Exec. Risk Indem., Inc.*, 681 F. Supp. 2d at 722

("The burden to establish waiver rests on the one asserting waiver, and waiver is never presumed." (citation omitted)).

As discussed at length above—absent modifications—Defendants defaulted under the terms of Note 3, the Note 3 Deed of Trust, Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees. Additionally, the record reflects that Plaintiff had contractual discretion to accelerate the Debts upon Defendants' default under Note 3, the Note 3 Deed of Trust, Note 14, and the Note 14 Deeds of Trust. (*See* ECF No. 43, Ex. A (providing a provision in Note 3 stating that, upon a "material default," "[Note 3] and other debts due [Plaintiff] by any one or more of [Defendants Farris Sayer and David Sayer] shall immediately become due and payable without notice, at the option of [Plaintiff]"); *id.*, Ex. B at 4 (providing the following provision in the Note 3 Deed of Trust: "Upon the occurrence of any event of default, and after having given any required notice, [Plaintiff] may, at its option, without further notice to [Defendants Farris Sayer and David Sayer], . . . declare the [debt pursuant to Note 3] to be immediately due and payable in full . . . ."); *id.*, Ex. F at 2 (providing a provision in Note 14 stating that, upon a material default, "[Note 14] and other debts due [Plaintiff] by . . . [Defendant Sayer Brothers] shall immediately become due and payable without notice, at the option of [Plaintiff]"); *id.*, Ex. G at 4 (providing the following statement in the First Note 14 Deed of Trust: "Upon the occurrence of any event of default, and after having given any required notice, [Plaintiff] may, at its option, without further notice to [Defendants], . . . declare the [debt pursuant to Note 14] to be immediately due and payable in full . . . ."); *id.*, Ex. H at 4 (providing the same provision in the Second Note 14 Deed of Trust); *id.*, Ex. I at 4 (providing the same provision in the Third Note 14 Deed of Trust).)

Nonetheless, the Court finds that there are genuine issues of material fact as to whether Plaintiff waived Defendants' defaults under the terms of Note 3, the Note 3 Deed of Trust, Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees, as well as its discretionary option to accelerate the balance of the Debts. In its February 28, 2014 demand letters, Plaintiff notified Defendants that—absent Defendants curing the defaults in an allotted period of time—Plaintiff intended to accelerate the balances of the Debts under Note 3 and Note 14. (*See id.*, Ex. C at 2 (providing Plaintiff's statement in the Note 3 Demand Letter that Plaintiff "shall immediately accelerate all sums due under [Note 3]" if Defendants Farris Sayer and David Sayer failed to pay the remaining balance under Note 3 by March 10, 2014); *id.*, Ex. K at 3 (providing the following statement in the Note 14 Demand Letter: "If [Plaintiff] fails to receive satisfactory evidence of the payment of the taxes and/or redemption of the [Note 14 Properties], as applicable, by the close of business on March 10, 2014, please be advised that [Plaintiff] shall immediately accelerate all sums due under [Note 14] . . . .").) However, following these letters, Plaintiff sent the monthly Payment Correspondences to Defendants. (*See* ECF No. 54, Exs. A–C.) Plaintiff sent these correspondences to Defendants between April 2014 and June 2015—both before and after the initiation of the instant litigation, in which Plaintiff seeks the full and accelerated balances under Note 3 and Note 14. (*See id.*) As addressed above, the Payment Correspondences do not request that Defendants pay the full remaining balances under Note 3 and Note 14. (*See id.*) Rather, these correspondences provide total monthly amounts due under both Note 3 and Note 14 that are close to or identical to the original monthly installments provided under these promissory notes and their formal written modifications. (*See id.*) As such, Plaintiff's statements in the Payment Correspondences and the instant case regarding the amounts Defendants immediately owe are

36

inconsistent and create genuine issues of material fact as to whether Plaintiff waived Defendants' defaults and its discretionary option to accelerate the balances due and owing under Note 3 and Note 14. *See, e.g.*, *Ara*, 387 S.E.2d at 323 ("Waiver may be established by express conduct or impliedly, through inconsistent actions." (citing *Creteau*, 119 S.E.2d at 339)).

These genuine issues of material fact preclude summary judgment in favor of either party on the issue of waiver. *See, e.g.*, Fed. R. Civ. P. 56(a) (providing that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law"). Instead, these issues are properly left to the decider of fact. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Accordingly, the Court **DENIES** Plaintiff's Motion, insofar as Plaintiff asserts that it did not waive Defendants' defaults under Note 3, the Note 3 Deed of Trust, Note 14, the Note 14 Deeds of Trust, and the Note 14 Guarantees, as well as Plaintiff's discretionary option to accelerate the outstanding balances under Note 3 and Note 14. The Court also **DENIES** Defendants' Motion, insofar as Defendants request summary judgment as to whether Plaintiff waived Defendants' defaults under the parties' agreements and Plaintiff's discretionary option to accelerate the Debts.

## D.    Equitable Estoppel

Defendants next argue that they are entitled to summary judgment because "Plaintiff is estopped from obtaining a judgment for the accelerated balances of Note 3 and Note 14."[5] (ECF No. 50 at 8.) The Court disagrees.

---

[5] Defendants do not argue that the Court should deny Plaintiff's Motion based on this estoppel argument. (*See* ECF No. 54.)

"Equitable estoppel 'relates to misrepresentations of fact, positive acts, and omissions.'" *Martin-Evans v. Chesapeake Appalachia, LLC*, Civil Action No. 5:15CV87, 2015 WL 5076992, at *6 (N.D. W. Va. Aug. 27, 2015) (*Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 441 (4th Cir. 2001)). "The doctrine of estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." *Ara v. Erie Ins. Co.*, 387 S.E.2d 320, 324 (W. Va. 1989) (citations omitted). "Estoppel is properly invoked to prevent a litigant from asserting a claim or a defense against a party who has detrimentally changed his position in reliance upon the litigant's misrepresentation or failure to disclose a material fact." *Id.* (citations omitted). As such, "[t]he focus of estoppel . . . is on the party seeking its application." *Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135, 143 (W. Va. 1998). Additionally, "unlike waiver, the doctrine of estoppel requires detrimental reliance." *Id.* (citations omitted).

Under West Virginia law, a party asserting equitable estoppel must establish the following elements: (1) "a false representation or a concealment of material facts;" (2) "it must have been made with knowledge, actual or constructive of the facts;" (3) "the party to whom it was made must have been without knowledge or the means of knowledge of the real facts;" (4) "it must have been made with the intention that it should be acted on;" and (5) "the party to whom it was made must have relied on or acted on it to his prejudice." *Folio v. City of Clarksburg*, 655 S.E.2d 143, 148 (W. Va. 2007) (quoting *Stuart v. Lake Wash. Realty Corp.*, 92 S.E.2d 891, 893 (W. Va. 1956)). "Accordingly, '[t]o raise an equitable estoppel there must be conduct, acts, language or silence amounting to a representation or a concealment of material facts.'" *Id.* (alteration in original)

(quoting *Stuart*, 92 S.E.2d at 893). The party that "asserts . . . estoppel has the burden of proving it." *Mundy v. Arcuri*, 267 S.E.2d 454, 457 (W. Va. 1980) (citations omitted).

The Court finds that there are genuine issues of material fact as to whether Plaintiff was estopped from accelerating the Debts. Regarding the representation element of estoppel, Plaintiff sent the monthly Payment Correspondences to Defendants between April 2014 and June 2015. (*See* ECF No. 54, Exs. A–C. *But see id.* (omitting a correspondence for September 2014).) These correspondences represented that Defendants owed total monthly amounts substantially less than the remaining balances under Note 3 and Note 14. (*See id.*) Defendants could have construed these communications as representations from Plaintiff regarding the monthly amounts Defendants owed to bring these promissory notes current. Nonetheless, as Defendants indicate, the Payment Correspondences never explicitly state that they replace Plaintiff's previous and ongoing representations to Defendants regarding the acceleration of the Debts. (*See id.*) As such, genuine issues of fact remain as to whether the Payment Correspondences were representations to Defendants that they only owed the monthly amounts referenced in these communications, and not the entire balance under the promissory notes.

As to the second element of estoppel, Plaintiff undoubtedly had knowledge of the relevant facts. Indeed, Plaintiff is the party that both sent the Payment Correspondences and separately notified Defendants regarding the acceleration of the Debts. (*See, e.g.*, *id.* (providing the Payment Correspondences); ECF No. 42 (constituting the Amended Complaint).)

Regarding the third element, the record is not clear as to whether Defendants had knowledge regarding the real facts surrounding the Payment Correspondences, such that they could properly interpret the meaning of these communications. On the one hand, the Payment

Correspondences indicated that Defendants owed total monthly amounts substantially lower than the remaining balances under Note 3 and Note 14. (*See* ECF No. 54, Exs. A–C.) However, on the other hand, Defendants were also engaged in ongoing negotiations with Plaintiff regarding a separate forbearance. (*See, e.g.*, ECF No. 53, Exs. O–R, T.) Furthermore, during the period when Plaintiff sent the Payment Correspondences, it also initiated the instant litigation, in which it seeks the accelerated balance of the Debts. (*See, e.g.*, ECF No. 1 (constituting Plaintiff's initial complaint, which it filed on June 30, 2014).) This record presents genuine issues of material fact as to Defendants' knowledge regarding the Payment Correspondences.

The fourth element of estoppel is satisfied based on this record. Plaintiff stated in the Payment Correspondences that Defendants owed delineated monthly amounts on Note 3 and Note 14. (*See* ECF No. 54, Exs. A–C.) These statements indicate Plaintiff's intent that Defendants should act on these communications and pay the requested amounts.

Finally, as to the fifth element, the record indicates that Defendants relied on Plaintiff's representations in the Payment Correspondences to their prejudice by paying the monthly amounts requested by Plaintiff in these communications. (*See, e.g.*, ECF No. 50 at 8.) The fifth element of estoppel is thus satisfied here.

In summary, while the record supports some elements of Defendants' estoppel argument, there remain genuine issues of material fact regarding whether Plaintiff was estopped from accelerating the Debts. These issues are not properly resolved at the summary judgment stage. *See, e.g.*, Fed. R. Civ. P. 56(a) (stating that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law").

The Court therefore finds that Defendants are not entitled to summary judgment as to their estoppel argument.

Accordingly, the Court **DENIES** Defendants' Motion, insofar as Defendants request summary judgment on the basis that Plaintiff was estopped from accelerating the Debts.

### E.     Implied Covenant of Good Faith and Fair Dealing

Defendants argue that they are entitled to summary judgment because Plaintiff breached the implied covenant of good faith and fair dealing by exercising its discretion under the parties' agreements to accelerate the Debts in bad faith.[6] (*See, e.g.*, ECF No. 54 at 14–15 (providing Defendants' contention that "a genuine issue of material fact remains as to whether Plaintiff breached its agreement with . . . Defendants, exercised its discretion in bad faith, and in addition, breached the covenant of good faith and fair dealing").) Defendants alternatively argue that there are genuine issues of material fact as to Plaintiff's purported bad-faith acceleration of the Debts that preclude summary judgment in favor of Plaintiff. (*See* ECF No. 55 at 11–12.)

West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) (quoting *Hoffmaster v. Guiffrida*, 630 F. Supp. 1289, 1290 (S.D. W. Va. 1986)). *See generally Suntrust Mortg., Inc. v.*

---

[6] In its opposition to Plaintiff's Motion, Defendants argue that "genuine issue[s] of material fact remain[] as to whether Plaintiff . . . exercised its discretion in bad faith, and in addition, breached the covenant of good faith and fair dealing" by accelerating the Debts. (ECF No. 54 at 15; *see also id.* at 12–15 (separately addressing a bad-faith argument and an argument pursuant to the implied covenant of good faith and fair dealing).) Defendants' separate bad-faith argument and implied covenant of good faith and fair dealing argument both assert that Plaintiff acted in bad faith by accelerating the Debts, (*see id.* at 12–15)—arguments that implicate the implied covenant of good faith and fair dealing, *cf. Warden v. PHH Mortg. Corp.*, Civil Action No. 3:10–CV–75, 2010 WL 3720128, at *6 (N.D. W. Va. Sept. 16, 2010) (denying the defendant's motion to dismiss as to the implied covenant of good faith and fair dealing claim where "the plaintiffs . . . sufficiently alleged that the defendants exercised their discretion [under the contract] in bad faith"). The Court therefore construes both arguments as Defendants' contention that Plaintiff violated the implied covenant of good faith and fair dealing when it accelerated the Debts.

41

*United Guar. Residential Ins. Co. of N.C.*, 508 F. App'x 243, 253 (4th Cir. 2013) (applying Virginia law and finding that "the district court erred in considering" the plaintiff's argument regarding the implied covenant of good faith and fair dealing in response to the defendant's breach-of-contract counterclaim where "the implied covenant of good faith and fair dealing was not raised until . . . long after an affirmative defense must be raised"); *id.* ("[A]ffirmative defenses that raise new facts and arguments, which [ ], if proven, would defeat the plaintiff's claim and thus are true affirmative defenses[,] include mitigation of damages, failure of plaintiff to fulfill conditions precedent, *breach of the covenant of good faith and fair dealing*, and waiver." (alterations in original) (quoting Def. Against a Prima Facie Case § 2:1 (rev. ed. 2012))). "The implied covenant of good faith and fair dealing extends only to performance of the contract in relation to rights and benefits granted under it." *Spoor v. PHH Mortg. Corp.*, Civil Action No. 5:10CV42, 2011 WL 883666, at *5 (N.D. W. Va. Mar. 11, 2011); *see also Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 457 S.E.2d 502, 508 (W. Va. 1995) ("[T]he obligation of good faith extends only to the 'performance or enforcement' of the business transaction." (quoting *Ashland Oil, Inc. v. Donahue*, 223 S.E.2d 433, 440 (W. Va. 1976))). "[W]here the express intention of contracting parties is clear, a contrary intent will not be created by implication." *Barn-Chestnut, Inc.*, 457 S.E.2d at 509 (citation omitted). As such, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." *Id.* (citation omitted). Nonetheless, "[w]hen a contract confers discretion on one of the parties that affects the rights of the other, that discretion must be exercised in a reasonable manner based upon good faith and fair play." *Staats v. Bank of Am., N.A.*, Civil Action No. 3:10–CV–68, 2010 WL 10899255, at *10 (N.D. W. Va. Nov. 4, 2010) (quoting *Strategic Outsourcing, Inc. v. Cont'l Cas. Co.*, 274 F. App'x

42

228, 233 (4th Cir. 2008)); *cf. Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 156 F.3d 535, 542

(4th Cir. 1998) (discussing contract law in Virginia and noting that "it is a basic principle of

contract law in Virginia, as elsewhere, that although the duty of good faith does not prevent a party

from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in

bad faith, even when such discretion is vested solely in that party" (emphases in original) (citation

omitted)).

As discussed above, Plaintiff had contractual discretion to accelerate the Debts upon

Defendants' default under the terms of Note 3, the Note 3 Deed of Trust, Note 14, and the Note

14 Deeds of Trust. (*See* ECF No. 43, Ex. A at 2 (Note 3); *id.*, Ex. B at 4 (the Note 3 Deed of Trust);

*id.*, Ex. F at 2 (Note 14); *id.*, Ex. G at 4 (the First Note 14 Deed of Trust); *id.*, Ex. H at 4 (the

Second Note 14 Deed of Trust); *id.*, Ex. I at 4 (the Third Note 14 Deed of Trust).) Plaintiff chose

to exercise this discretion by accelerating the Debts when Defendants defaulted under the terms of

these instruments. (*See, e.g.*, ECF No. 42 (constituting the Amended Complaint).)

Defendants contend that Plaintiff exercised this discretion in bad faith. (*See, e.g.*, ECF No.

54 at 12–13.) In support of this assertion, Defendants cite an internal e-mail correspondence on

February 7, 2014 between employees of Plaintiff. (*See, e.g.*, *id.*) This correspondence includes the

following pertinent discussion:

> [Employee 1:] [Defendant Sayer Brothers] are a case. I have worked with them
> quite a while and I don't see them ever changing. They just don't want to give up
> their real estate, but for some reason, won't pay the taxes on it.
>
> [Employee 2:] I'm going to have to shock them into reality because of the big issues
> they have with consumer collateral on commercial debt now. We can't renew it and
> frankly they need a real mortgage on the residence that will escrow. I've pushed for
> current financials since they came to us and going to try to come up with some
> suggestions. I know it isn't going to be easy but Patrick says they are looking really
> frail and they can't take it with them.

43

(ECF No. 49, Ex. D.) Defendants argue that Plaintiff's stated intention to "shock" Defendants "into reality" evidences Plaintiff's bad faith in accelerating the Debts. (*See, e.g.*, ECF No. 54 at 12–13.)

The Court agrees that this e-mail—and particularly the stated intention of Plaintiff's employee to "shock" Defendants "into reality"—could be construed as evincing bad faith on the part of Plaintiff regarding its subsequent acceleration of the Debts. Indeed, Plaintiff's employees had this e-mail exchange mere weeks before Plaintiff sent the demand letters to Defendants, in which Plaintiff noted its intention to accelerate the Debts if Defendants failed to cure their purported defaults under the parties' agreements. (*See* ECF No. 43, Ex. C (the Note 3 Demand Letter); *id.*, Ex. E (the Note 12 Demand Letter); *id.*, Ex. K (the Note 14 Demand Letter).)

However, the Court finds that there remain genuine issues of material fact as to whether Plaintiff accelerated the Debts in bad faith. While the February 7, 2014 internal e-mail exchange creates questions on this issue, it is not dispositive as to whether Plaintiff elected to accelerate the Debts for a nefarious purpose. (*See* ECF No. 49, Ex. D.) Furthermore, as Plaintiff notes, Plaintiff engaged in negotiations with Defendants in an attempt to resolve the parties' disputes both before and after it filed the instant case. (*See, e.g.*, ECF No. 53, Exs. O–R, T (constituting e-mail correspondence between the parties regarding Note 3, Note 12, and Note 14).) This record creates genuine issues of material fact as to Plaintiff's motive in accelerating the Debts that are not amenable for disposition at summary judgment.[7]

---

[7] Plaintiff notes that, in *Branch Banking & Trust Co. v. Tractor Co.*, a court in this district recently addressed identical language in a contract regarding Plaintiff's discretion to accelerate debts and found that Plaintiff's decision to accelerate the debts, rather than renew the loans, did not constitute bad faith. Civil Action No. 5:14–cv–25740, 2015 WL 403808, at *4 (S.D. W. Va. Jan. 29, 2015). However, *Tractor Co.* is distinguishable from the instant case, insofar as it did not involve evidence outside of the parties' contracts potentially indicating that Plaintiff elected acceleration over other alternatives due to a bad-faith motive. *See id.*

Accordingly, the Court **DENIES** Plaintiff's Motion, insofar as Plaintiff argues that it accelerated the Debts in good faith. The Court further **DENIES** Defendants' Motion to the extent that Defendants request summary judgment on whether Plaintiff breached the implied covenant of good faith and fair dealing by electing to accelerate the Debts.

### IV.  Conclusion

For the reasons provided herein, the Court **DENIES** both Plaintiff's Motion, (ECF No. 43), and Defendant's Motion, (ECF No. 49).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 24, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

45